**CIRCUIT COURT OF THE CITY OF RICHMOND**

Joseph Baradino Taylor and
Federal Kemper Insurance Co.

v.

Leon Darby et al.

January 5, 1984

Case No. LG 1188

By Judge Marvin F. Cole

This is a declaratory judgment suit brought for the purpose of deciding the following question: Whether the family policy issued by Aetna to Darby on the 1972 Chevelle affords coverage to plaintiff, Taylor, in connection with the accident on April 24, 1982, at which time Taylor was driving the Nova purchased by Darby.

We must look to the provisions of the policy to determine the rights between the parties. Aetna under the terms of the policy agreed to pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages for bodily injury and property damages arising out of the ownership, maintenance, or use of the owned automobile or any non-owned automobile.

Under the facts of this case and the policy provisions, we must look to the definitions in the policy of *Insured* and *Owned Automobile*.

The policy provides that the following are insureds under the liability coverage:

(a) With respect to the owned automobile,

(1) the named Insured and any resident of the same household,

(2) any other person using such automobile with the permission of the named Insured, provided his actual operation . . . is within the scope of such permission.

The policy provides that "owned automobile" means:

    (a) a private passenger . . . automobile described in this policy for which a specific premium charge indicates coverage is afforded.

    (b) a trailer owned by the named insured.

    (c) a private passenger . . . automobile ownership of which is acquired by the named Insured during the policy period, provided

        (1) it replaces an owned automobile as defined in (a) above, or

        (2) the company insures all private passenger, farm and utility automobiles owned by the named Insured on the date of such acquisition, and the named Insured notifies the Company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the Company applicable to such automobile, or

    (d) a temporary substitute automobile.

I will postpone the issue of "permission" for a time and look to the "owned automobile" provisions of the policy. It can readily be seen that (a), (b), and (d) are not applicable to this case. Therefore, we need only discuss (c) of the policy.

The evidence in the case supports the position that Darby owned only one vehicle and it was insured under the Aetna policy. Therefore, Aetna insured all of the vehicles of the named Insured, Leon Darby. But to afford coverage for the Nova, Darby had to notify the company during the policy period or within thirty days after the date of such acquisition of his election to make the policy that he had with Aetna applicable to the newly-purchased 1969 Nova. Thus, it can be seen that "after-acquired automobiles" are not automatically covered under the policy and are only covered at the election of the named Insured upon his notification of Aetna within the terms of the policy.

Under the facts of this case, the election time started to run on the date of acquisition, which was April 24, 1982. The policy period ended on June 14, 1982, which was a period of fifty-one days. The thirty days ended May 24, 1983. The provisions of the policy are not too clear concerning when the election must be made, and we must look to case law for an interpretation of the language used.

First, however, the true facts must be ascertained, and I hereby find as established by a preponderance of the evidence the following facts:

1. Darby owned a 1972 Chevrolet Chevelle covered by an Aetna Insurance Company policy for the period of December 14, 1981, through June 14, 1982.

2. Darby purchased a 1969 Nova on April 24, 1982, prior to the accident from Ambrose, and Darby never intended to operate this vehicle on the highways but was to transfer the motor from the Nova to the Chevelle.

3. The accident occurred on April 24, 1982, while Joe Taylor was driving the Nova, and Darby learned about the accident about five or six minutes after it occurred.

Darby stated (Tr. 9) that he went to the offices of Hundley and Chinn Insurance Agents in Tappahannock within three or four weeks after the accident occurred and spoke with the secretary about the accident. Darby stated that he did not know the precise date and that he had "just sort of a general memory" and that three or four weeks would be within a "general range." Darby stated to the secretary that he had "bought a car, another car, and it was involved in an accident." He told the secretary that Joe Taylor was the driver of the vehicle, that he told her where it occurred, when it occurred, and that sort of thing. He told them that somebody had been killed. (Tr. 10).

Darby did not know who he had talked to but that he had talked to a secretary. Darby stated that they "called some people in Richmond or something, Aetna or something, and talked to them on the phone."

Darby also testified that he went to the insurance agent's office with some DMV papers he received shortly after the accident and gave them to the secretary. Then at a later date, Darby took the suit papers he received to the insurance agent's office.

On cross-examination, Darby stated that he bought the '69 Nova for the sole purpose of removing the engine and putting that engine in the Chevelle. (Tr. 14).

Darby testified that after purchasing the Nova from Ambrose on April 24, 1982, Taylor drove it to his (Taylor's) house and parked it in the yard, with the understanding that Darby would go back to Taylor's house the next day and start removal of the engine from the Nova to place it in the Chevelle. There was no conversation at all between Taylor and Darby about Taylor driving the Nova.

Darby further testified that he never intended to have insurance on the Nova and that he never called Hundley and Chinn or anyone else at Aetna and told them that he wanted coverage on the '69 Nova. (Tr. 17.)

Darby acknowledged receipt of a letter dated June 16, 1982, from Hundley and Chinn, Inc. (defendant Exhibit 1) and stated that his visit to the office could have been before June 16, 1982, or could have been after June 16, 1982.

Mr. Mark S. Chinn testified that the first notice that Hundley and Chinn, Inc., had of the accident was on June 16, 1982, when the secretary of an attorney, Joseph Spruill, called the office inquiring as to an accident involving a vehicle owned, possibly owned, by Leon Darby and asked if they had notice of this accident, and they told her that they had no notice of the accident.

Mr. Chinn stated that they sent the letter to Darby on the same day but could not contact Aetna until June 17, 1982, since they closed their office about 4:15 or 4:30 in the afternoon. They were contacted on June 17, 1982, and given notice of the accident.

Therefore, the court finds as a fact that:

1. Darby never at any time contacted Aetna, or its agent, and made an election that the Nova be covered under the applicable policy.

2. That Darby did not report the accident to Aetna, or its agent, until after June 16, 1982, and that he then contacted Hundley & Chinn, Inc., in response to their letter to him dated June 16, 1982. (Defendant Exhibit 1).

3. That the first notice that Aetna had of the accident was on June 16, 1982, when their agent was contacted by a secretary from Mr. Spruill's office.

Based upon the above facts, it can be seen that Darby did not make any election to cover the Nova during the policy period or during the thirty-day period following acquisition of the automobile. However, this does not address one other issue raised by the plaintiff and this is:

What is the legal effect of the accident itself occurring within the thirty-day period and within the policy period?

The *Celina* case█ held that the provision in the policy providing for an election within the policy period was a condition precedent, and therefore, in accordance with usual contract law, no liability attached until the condition was performed. I am of the opinion that the Supreme Court would hold the same way when faced with the thirty-day period provision. I believe they will hold that this is a condition precedent. There is certainly no sound reason to treat one provision in one manner and the other provision in another. Virginia has chosen the minority view in this regard. Also, why should a person who has had an accident receive more coverage than a person who has not had an accident, when the facts are exactly the same?

I have gone into the above more as a theoretical matter than for any other reason. I really do not believe that Taylor was operating the Nova with permission of Darby. Under the facts of this case, you cannot get permission out of silence. Taylor had never borrowed a car from Darby before, and there are simply no facts available upon which you can find an implied permission.

Under all of the above, I find that the Aetna policy does not afford any coverage in this matter.